## MARGARET McDONOUGH LYNCH *vs.* HARRY KAMANITZ ET AL.

*Review on Appeal—Lease Conditioned on Improvements— Evidence.*

A party who has not appealed cannot complain of error in a ruling.                                                    p. 385

Plaintiff cannot complain of a provision in the decree which was in accord with the prayer of the bill.                p. 385

In a suit by a landlord against the tenant under a lease which was not to "take effect until the landlord" made specified improvements, *held* that the evidence failed to show the making of such improvements, so as to impose liability for the rent.
pp. 385, 386

The fact that the lessor told defendant lessee, who objected that the lessor had not made improvements as stipulated, that he need not take the property if he did not like it, and that the lessor later rented the property to another without having withdrawn this statement or intimated that she intended to hold defendant, *held* to relieve defendant from liability under the lease.                                         p. 386

*Decided May 7th, 1925.*

Appeal from the Circuit Court of Baltimore City (STEIN, J.).

Bill by Margaret McDonough Lynch against Harry Kamanitz and Simon Kamanitz. From the decree rendered, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*John C. Tolson,* and *W. Leslie Prout,* with whom was *Albert C. Tolson,* on the brief, for the appellant.

*Mason P. Morfit,* with whom were *Sappington & Morfit* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

On August 19th, 1922, appellant by agreement in writing leased to Harry Kamanitz, one of the appellees, the store room 713 Frederick Avenue in Baltimore City for the term of three years "beginning on the date of possession," at $70 a month. The lease contained the usual covenants by the tenant. It contained this further provision:

"It is further agreed that this lease does not take
effect until the landlord improves the premises with
a new store front, and a kitchen in rear not smaller
than 6x14 ft."

This paper was signed by appellant and by both appellees,
although only Harry Kamanitz was named in the lease as
tenant. It was witnessed by Nell E. Regner.

There was considerable delay in making improvements,
and when Simon Kamanitz, one of the appellees, was noti-
fied that the premises were ready for occupancy, he complain-
ed of the delay, but mainly, after inspection, that the im-
provements were not in accordance with the agreement. He
testified:

"Two weeks before Christmas, she came down and said,
'I am ready for you now.' When he went out to look at the
property witness said, 'You are not ready at all, where is
your bay window inside? Where is the spare room in the
rear?' She said: 'That is all I am going to do. If you don't
want it you don't have to take it.' 'I told her I did not like
it the way it is.'"

Tobias Hartz, a son in law of Simon Kamanitz, testified
that appellant said on this occasion: "This property was
just the way it was going to be, that she was not going to put
another penny into it and the property was ready to occupy,
and she said, 'If you don't want it you don't have to take it,'
that someone else would take it."

This testimony is not rebutted by appellant.

Appellees testify without contradiction that no demand
was ever made for rent or any claim made by appellant ex-
cept by the filing of the bill of complaint in this case. In
October, 1923, the store was rented to some one else.

The bill was filed on March 26th, 1924. In it plaintiff
alleges among other things that it was the intention of the
parties that the lease should be drawn in such manner as to
make both of the defendants (appellees here) responsible to
plaintiff for the rent; that the lease was drawn as between
plaintiff as landlord and Harry Kamanitz as tenant, the name

of Simon Kamanitz, father of Harry, having been omitted
therefrom through error, but that plaintiff refused to lease
the property upon the sole responsibility of the son, and that
the lease was signed and sealed by plaintiff and by both
defendants, the signatures witnessed, and a copy of said lease
delivered to said Simon Kamanitz, who paid plaintiff forty
dollars on account of rent, that after the execution of the lease,
plaintiff erected the new store front and the kitchen on the
rear of said premises as called for by the lease; that the rent
is now overdue and greatly in arrears; that plaintiff is with-
out adequate remedy at law and is entitled to have the lease
reformed by having the name of Simon Kamanitz inserted
therein as "tenant" and the letter "s" after the word "tenant"
wherever said word appears in the lease.

The prayer of the bill is for reformation of the lease as
above indicated; and that after such reformation defendants
be required to pay plaintiff such sum of money as may be
found to be due from the date of the lease to October 23rd,
1923, and interest thereon; and for further relief.

The answer avers that the negotiations for the rental of
the property were with Harry Kamanitz and Simon Kaman-
itz acting in behalf of his son, but denies that such negotia-
tions were conducted with the view of having said Simon
become a tenant of the property; it also denies that it was
the intention of the parties that the lease should be drawn
in such manner as to make both defendants liable for rent,
or that the name of Simon was omitted from the lease through
error, and avers that it was intentionally omitted; and that
the forty dollars paid by Simon was made for and on behalf
of Harry only; it denies that any rent ever became due; it
denies that the improvements provided by the contract were
made; and it avers that because of the failure of plaintiff
to make said improvements in accordance with her promises,
and because of the great delay in completing them, the de-
fendant Harry Kamanitz refused to accept the store, where-
upon said lease was abrogated by mutual consent, and plain-
tiff thereafter dealt with the property without reference to the

defendants or to said lease, and in fact accepted a surrender of the term in said lease mentioned.

Subsequently, in the course of the taking of testimony, the bill was amended to correspond with plaintiffs version of the facts.

There was thus presented to the chancellor two questions: 1 : Was Simon Kamanitz a tenant according to the true intent and understanding of the parties ?  2 : What if anything was due plaintiff ?

He decided the first question in favor of plaintiff and decreed that the lease be reformed in accordance with the prayer of the bill.

Under the second item he decided that defendants should pay plaintiff two hundred and fifty dollars, "which payment shall be and constitute a full and final discharge of any and all liability of the defendants, and each of them, under said agreement of lease."

There was no appeal taken by defendants and they cannot now be heard to complain of any error in the ruling. Nor can plaintiff be heard to complain of any error of law, if there was any, in the reformation of the lease, because it was in accordance with the prayer of the bill.

We have therefore only to determine whether, assuming plaintiff was entitled to any relief in equity on the facts proved (which we do not decide), the chancellor erred in the relief granted. We have examined the testimony carefully but shall not recite it in detail. The learned and careful chancellor had the witnesses before him and an opportunity to observe their demeanor; we should be disposed to yield much to his judgment if we differed with him as to the weight of the testimony as it appears in the record. But we are quite satisfied that if he made any mistake it was not against the appellant.

By the terms of the written lease it was agreed that it should not take affect "until the landlord improves the premises with a new store front, and a kitchen in rear not smaller than 6x14 ft." By the lease as reformed, the new front was

to be "similar to the front of the store occupied by The Great Atlantic and Pacific Tea Company about five doors east of property 713 Frederick Avenue."

There is no evidence in the record that the new front was like the one in that store. Besides the weight of the testimony is, as it appears in the record, that the store which was to be the pattern was the one next door to 713 Frederick Avenue, and the uncontradicted testimony of defendants is that the new front was not like the one in that store. Besides, the part of the store room partially separated from the rest of the room by a partition extending neither all the way across nor up to the ceiling scarcely measures up to "a kitchen in rear." If the kitchen was to be taken off of the store room it was hardly necessary to stipulate that it should not be less than "6x14 ft."

Apparently the chancellor was influenced in making some allowance to the plaintiff by the fact that appellees were at the store a number of times and saw the work as it progressed, but it does not follow that they could tell just how the windows would be finished when they last saw the work before its completion.

Again there is no contradiction of defendant's testimony that plaintiff told Simon Kamanitz that they need not take the property if they did not like it and that ten months later she rented it to someone else, without ever having withdrawn this statement or intimated that she intended to hold defendants for the rent.

We are unable to find any error in the decree appealed from by which appellant was injured.

*Decree affirmed, with costs to appellees.*