## FREEDMAN *v.* SEIDLER

[No. 88, September Term, 1963.]

40

*Decided November 12, 1963.*

*Motion for reconsideration and rehearing filed December 9, 1963, denied December 11, 1963.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Melvin J. Sykes,* with whom was *Henry R. Wolfe* on the brief, for the appellant.

*Rubin Gertz* for the appellee.

42

HORNEY, J., delivered the opinion of the Court.

In this equity action for injunctive relief and a money judgment for damages allegedly sustained as the result of the breach by one tenant of the restrictive covenant in the lease between himself and the landlords prohibiting competition with another tenant of the same landlords, the questions on appeal relate to the dismissal of the final injunctive order, the award of damages and the allowance of counsel fees.

Since 1950 Minnie Seidler (often herein referred to as the injured tenant) had operated a women's specialty shop at 3514 Eastern Avenue in Baltimore City for the sale of millinery, handbags, gloves, hosiery, costume jewelry, belts and accessories. In April 1958 she entered into a renewal of her lease for another term of five years. In the lease, the landlords covenanted "not to lease any other property owned by Landlords and fronting on Eastern Avenue * * * to any other person, firm or corporation which would conduct therein a business in direct competition with the business of the Tenant."

In September 1960, Israel Freedman (often herein referred to as the offending tenant), who specialized in the sale of men's, women's and children's shoes, entered into a lease with the same landlords for the rental of 3516 Eastern Avenue. Prior thereto he had attempted to purchase the right to sell handbags and hosiery in the shoe shop he intended to operate next door to the specialty shop, but the negotiations were unsuccessful. Accordingly, the lease for the shoe shop provided that the premises were to be used for the retail sale of shoes "and other kindred articles" and the tenant was specifically excluded from offering for sale any "millinery, handbags, hosiery and gloves and costume jewelry." When, however, the offending tenant opened his store on September 22, 1960, he placed signs in the window advertising: "Free * * * Nylon hose with purchase of * * * shoes $3.99 and up" and "Free gift of handbag with purchase of shoes of $5.99 and up." He also placed handbags in the window in connection with the display of shoes. According to the offending tenant, the signs were taken out of the window when the distribution of hosiery and handbags ceased on October 25, 1960, but some handbags were displayed

for a "little while longer." According to the injured tenant, however, the signs remained in the window until the latter part of November 1960 and the handbags were displayed for an additional month.

The original action was brought by Minnie Seidler, the injured tenant, against Nathan Katz and others, the landlords. Besides requesting an order to require the landlords to prohibit Israel Freedman, the offending tenant, from conducting his business "in competition with and to the detriment" of her business by taking action against him, the injured tenant claimed damages for the violation of the covenant in her lease. The landlords impleaded the offending tenant as a third party and the injured tenant elected to so amend the action as to join the offending tenant as a defendant. Therein, the injured tenant, in addition to seeking permanent injunctive relief against the offending tenant, also sought damages for the violation of the restrictive covenant in the lease between the landlords and the offending tenant.

At the trial, the offending tenant testified that he was not offering hosiery and handbags for sale, but rather was giving them away as part of a promotional program to aid his sales of shoes. In support of her claim for damages, the injured tenant testified that as a result of the "give away" of the hosiery and handbags, "[w]e had a drastic reduction in our business" and that the "business fell off terribly." She stated that the decline started "as soon as those bags were given away and we have suffered since." A sales clerk, who had been employed by the injured tenant from April 1951 to August 1962, testified to the effect that after the promotional program began there was a decline in business and that many of the regular customers stopped buying at the specialty shop. Neither the owner of the specialty shop nor the sales clerk testified as to the percentage the business fell off nor as to the loss in profits sustained during the promotional program and subsequent periods. The only other witness who testified as to damages was an accountant employed by the injured tenant to prepare a financial report showing his computation of her loss of profits during the period from September 22, 1960, to March 31, 1963, to be used in the trial of this case. In substance, the testimony of the accountant was

contained in the financial report. Based upon a comparison of sales and profits for the years 1959-1960-1961, he testified that in 1960, until the beginning of the offending tenant's promotional scheme, gross sales averaged 10.87% ahead of 1959. By computing this percentage increase in sales with the sales made from September 22, 1960, until the business was discontinued on July 31, 1962, the report showed that the losses in net profits for the period from September 22, 1960, through July 31, 1962, were as follows: $1673.41 from September 22 to December 31, 1960; $3655.20 from January 1 to December 31, 1961; and $2364.23 from January 1 to July 31, 1962. No evidence was produced to show the difference in value between the lease of the injured tenant with the covenant unbroken and the same lease with the covenant broken.

At the conclusion of the trial, the lower court continued injunctive relief by permanently enjoining Israel Freedman, the shoe shop owner, from conducting his business in competition with the business of Minnie Seidler, the specialty shop owner; awarded her a money judgment against Israel Freedman for $7328.61 with costs, representing damages of $5328.61 and counsel fees of $2000; and dismissed the bill of complaint against Nathan Katz and the other landlords. Israel Freedman appealed, claiming (i) that the injunctive provisions of the decree should be reversed; (ii) that the damages awarded were speculative and conjectural and without rational foundation; and (iii) that the lower court erred in awarding counsel fees.

(i)

Insofar as Minnie Seidler is concerned, the decretal order directing the issuance of a permanent injunction against Israel Freedman should be dismissed as moot. It seems clear, since the operation of the specialty shop had been discontinued more than six months before the date of the final decree, that the change in circumstances which occurred after the issuance of the preliminary injunction, rendered the continuation of injunctive relief unnecessary. See *Tolman Laundry v. Walker*, 171 Md. 7, 187 Atl. 836 (1936).

(ii)

We do not agree that the damages awarded by the lower

court were speculative and conjectural or without rational foundation, but we think they were excessive and for that reason the judgment for money damages should be modified.

It is well settled in this State that a covenant in a lease to the effect that the tenant shall have the *exclusive* right of conducting a specified business on the leased premises may be injunctively enforced against both the landlord, *Snavely v. Berman*, 143 Md. 75, 121 Atl. 842 (1923), and a subsequent tenant of another part of the landlord's premises, who, at the time he entered into the lease, had notice of the right granted to the original tenant. *Schmidt v. Hershey*, 154 Md. 302, 140 Atl. 363 (1928). See also *Glen Burnie Plaza v. Schreiber*, 220 Md. 303, 152 A. 2d 807 (1959) ; *Slice v. Carozza Prop. Inc.*, 215 Md. 357, 137 A. 2d 687 (1958). Since the record is clear that the offending tenant was aware of the exclusive right of the injured tenant to sell handbags, hosiery and other specialties at 3514 Eastern Avenue before he leased 3516 Eastern Avenue, we think his "giving away" of handbags and hosiery (the values of which were included in the selling price of the shoes) was tantamount to selling them, and that the injured tenant was therefore entitled to seek injunctive relief against the landlords and the offending tenant to prevent the further breach of the covenant in her lease guaranteeing no competition. *Slice v. Carozza Prop. Inc., supra.* See also 2 *Powell on Real Property*, § 227.

In effect the bringing of this action in equity by the injured tenant against the landlords, and the subsequent impleading and joinder of the offending tenant as a third party, for injunctive relief and, in addition, for an award of damages, resulted in a single action against the offending tenant as well as the landlords for the breach by them of the covenant in the lease of the injured tenant guaranteeing her freedom from competition. Other than the offending tenant questioning the jurisdiction of equity to award damages because of an adequate remedy at law (which he abandoned upon the filing of a more elaborate amended bill), neither the landlords nor the offending tenant questioned the right of the injured tenant to sue them for damages. Instead the parties and the lower court seem to have regarded the injured tenant as a third party beneficiary. The

only defense to the adjunctive relief sought was that the damages were too speculative and conjectural and could not be determined with reasonable certainty. Consequently, we shall concern ourselves only with the nature and extent of the damages sustained by the injured tenant as a result of the competitive activities of the offending tenant.

The general rule is that an injured tenant may sue a landlord who has breached a covenant pledging no competition in an action at law for damages. See *Parker v. Levin,* 188 N. E. 502 (Mass. 1934), a landmark case in this area. Although a covenantee may be entitled to at least nominal damages for any breach of such a covenant, the courts in this country are not in agreement as to the proper measure to be used in ascertaining substantial damages sustained by the breach. But two measures seem to be utilized more often than the rest. Some courts consider the difference in what the value of the leasehold would be with the covenant against competition unbroken and the same leasehold with the covenant broken, and allow evidence of loss of profits as tending to show the value of the difference. *Parker v. Levin, supra.* Other courts allow the injured tenant to recover the lost profits caused by the prohibited competition (without considering any other element) if he can prove the amount thereof by competent evidence satisfactory to the court. See, for example, *Krikorian v. Dailey,* 197 S. E. 442 (Va. 1938). See also the law note, entitled *Lessors' Covenants Restricting Competition: Drafting Problems,* in 63 Harv. L. R. 1400. Other cases in this field are collected in 90 A.L.R. 1449.

Since is appears that loss of profits is the governing factor in both the above measures, we see no reason why loss of profits, when a reasonable method of computing such losses has been utilized, cannot be used as a measure for assessing damages caused by a breach of a covenant guaranteeing no competition. Nor is there any reason why such measure should not be applied to the case at bar. We think the financial report prepared by the accountant—and there was no evidence to the contrary —was a reasonable basis for computing the loss of profits through December 31, 1961. However, we are of the opinion that the damages recoverable by the injured tenant should have been limited to the period during which the breach of covenant

actually took place, that is, from September 22, 1960, through December 31, 1960. The financial report of the accountant shows that the loss of profits during this period was $1673.41. Accordingly, we shall reduce the amount of damages awarded by the lower court from $5328.61 to $1673.41. The injured tenant insists, and perhaps with some merit in a case such as this where the services of an accountant were necessary to show loss of profits, that she should be reimbursed for the expense of such services. But, in the absence of statutory authority permitting it, we think the charges of the accountant are not recoverable either as an element of damages or as a part of the costs. Compare point (iii) of this opinion, where, with respect to the allowance of counsel fees, it is said that the general rule is that costs and expenses other than actual court costs are not recoverable in an action for damages. We think the same rule is applicable to accountants charges, for we see no distinction in principle between such charges and attorneys fees.

(iii)

Nor should the lower court have allowed counsel fees as a part of the damages. The general rule is that costs and expenses other than the usual and ordinary court costs are not recoverable in an action for damages, and, in the absence of special circumstances or statutory requirement, counsel fees are not a proper element of damages in an action for breach of contract. See *Harry's Tavern, Inc. v. Pitarra,* 224 Md. 56, 166 A. 2d 908 (1961), and the cases and other authorities therein cited. See also *Rhodes Hardwood v. Blue Ridge,* 225 Md. 158, 169 A. 2d 399 (1961). The record in this case does not disclose such special circumstances as are required to justify the allowance of a fee for legal services, and, in this respect the present case is clearly distinguishable from *McGaw v. Acker, Merrall & Condit Co.,* 111 Md. 153, 73 Atl. 731 (1909). There the fee allowed was for legal services in a separate litigation against another party which the wrongful act of the defendant had required. Here, the fee allowed was for legal services rendered in this litigation. The fact that the landlords impleaded the offending tenant did not require the injured tenant to join him as a third party defendant. Nor did the impleading or joinder of

the offending tenant as a third party create such special circumstances as would justify the award of counsel fees.

*The provisions of the decree granting a permanent injunction and allowing a counsel fee are reversed; the award of damages is modified by reducing the judgment to $1673.41, and, the award, as modified, is affirmed; the appellant to pay the costs.*