# TAYLOR ET AL. *v*. WAHBY ET AL.

[No. 137, September Term, 1973.]

*Decided January 30, 1974.*

102

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, ▮ SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Thomas L. Craven,* with whom was *Joseph A. Lynott, Jr.,* on the brief, for Robert L. Taylor, part of appellant. *Paul H. Mannes,* with whom was *Stanley Klavan* on the brief, for John and Irene Toth, part of appellants. *George F. Paxton* for David Damazo, other appellant.

*Roy Niedermayer,* with whom was *Warren K. Kaplan* on the brief, for Nimer S. Wahby, one of appellees. *James K. Foley* for Fliegel Properties Management, Inc., other appellee.

BARNES, J., delivered the opinion of the Court.

The present case comes before us from certain judgments entered by the Circuit Court for Montgomery County (Shearin, J.), sitting without a jury, after our remand, without affirmance or reversal, pursuant to Maryland Rule 871, of a prior case between the same parties. *See Damazo v. Wahby,* 259 Md. 627, 270 A. 2d 814 (1970).[1] The first *Damazo* case gives much of the relevant background for the present case. That case involved two separate actions at law by two separate real estate brokers for commissions in connection

---

[1]. There was another appeal, also arising subsequent to the first *Damazo* case, involving a fraudulent conveyance of a note and a second deed of trust securing it. *See* Damazo v. Wahby, 269 Md. 252, 305 A. 2d 138 (1973).

with the sale of two separate apartment properties in Prince George's County.

One of the properties involved was a high-rise apartment property located on Edwards Way (Edwards Way), owned by Willowbrook Development Company, Inc. (Willowbrook). The other property was a garden-apartment property located on Riggs Road (Riggs Road), owned by Vance Properties, Inc. (Vance). David Damazo (Damazo) was the president and controlling stockholder of both Willowbrook and Vance. Both properties were sold under separate contracts of sale to Coronado-Adelphi, Inc. (Coronado), a corporation controlled by John and Irene Toth (Toth) and Robert L. Taylor (Taylor).

Nimer S. Wahby (Wahby), a real estate broker, contended that he was the procuring cause in the sale of each property. He filed an action at law in the Circuit Court for Montgomery County (Law No. 25,447) against Willowbrook, Vance, Damazo, Toth and Taylor, seeking recovery of (1) a real estate commission on both sales and (2) damages — compensatory and punitive — for tortious interference and for conspiracy to interfere with his alleged real estate listing contract.

Fliegel Properties Management, Inc. (Fliegel), also a real estate broker, contended that it was the procuring cause of the sale of each property. It also filed an action at law in the Circuit Court for Montgomery County (Law No. 25,778) against Willowbrook, Vance, Damazo and Toth, seeking recovery of (1) a real estate commission on both sales and (2) compensatory and punitive damages for tortious interference and for conspiracy to interfere with his alleged real estate listing contract. It is to be noted that Taylor was not a party defendant in the Fliegel case.

Both law actions were consolidated for trial and were tried together by Judge Shearin without a jury. The trial court found that Wahby was the procuring cause of the sale of Edwards Way and awarded him the following judgments:

(1) Against Willowbrook for real estate commissions in the amount of $47,500.00;

(2) Against Damazo for real estate commissions in the amount of $47,500.00 on the theory that Damazo was merely the alter ego of Willowbrook;

(3) Against Damazo, Toth and Taylor in the amount of $1.00 compensatory damages for tortious interference with the Wahby contract and also $5,000.00 punitive damages; and

(4) Against Damazo, Toth and Taylor in the amount of $1.00 compensatory damages for conspiracy to defraud Wahby of a real estate commission.

The trial court found that Fliegel was the procuring cause of the sale of Riggs Road and awarded Fliegel the following judgments:

(1) Against Vance in the amount of $38,500.00 for real estate commissions;

(2) Against Damazo in the amount of $38,500.00 for real estate commissions on the theory that Damazo was the alter ego of Vance;

(3) Against Damazo and Toth for $1.00 compensatory damages and for $5,000.00 punitive damages for tortious interference with the Fliegel contract; and

(4) Against Damazo and Toth for $1.00 compensatory damages for conspiracy to defraud Fliegel of a real estate commission.

The defendants in each law action filed appeals to this Court. A cross-appeal was filed *and was prosecuted* by Fliegel. Wahby filed a cross-appeal, *but did not prosecute the appeal*, asking in his brief in the first *Damazo* case that his judgments be affirmed.

In the first *Damazo* case, we concluded that the lower court erred in holding that Damazo was personally liable for real estate commissions payable to Wahby and Fliegel for the sale of properties held by the corporate vendors, Willowbrook and Vance, and that no punitive damages were

allowable. We remanded the case to the lower court under Maryland Rule 871, without affirmance or reversal, stating:

"It is apparent that the trial court considered Damazo as the chief instrument of harm to the brokers and the one who could be made to be financially responsible in actuality. The judgments Judge Shearin rendered reflect this, and it is obvious that if Judge Shearin had realized (1) that Damazo could not be held personally and directly responsible to pay the brokers their commissions under the contract counts of the declaration, (2) that he could not be held liable at all under the interference count of Wahby's declaration, (3) that he could not be held liable for punitive damages under the interference and conspiracy counts for lack of evidence of express malice, and (4) that for the same reason the Toths and Taylor could not be held liable for punitive damages under either the interference or conspiracy counts, the judgments he would have rendered properly and permissively could have appropriately reflected the amount of enforceable responsibility he found the evidence to place on Damazo, the Toths and Taylor, respectively, under the various counts. * * *

"The remand without affirmance or reversal will vacate all the judgments, except those against Willowbrook and Vance, which will remain undisturbed. The new judgments that will be entered should reflect the collectibility of the judgments against the corporations, perhaps by being entered for the amount of the commissions claimed with credit to be given for any amount recovered on the judgments against the corporations, since only one recovery of the actual damages can be allowed."

Before the mandate issued, Taylor and the other appellants moved for a reargument, stating as one of the grounds for the motion:

"(a) The trial court rendered judgment against the individual defendants (appellants) in the amount of $1.00 compensatory damage for tortiously interfering with the contracts of plaintiff Wahby (appellee). Wahby did not appeal from these judgments. In remanding the case to the trial court, this Court vacated the $1.00 judgments and directed that new judgments be entered:

'The new judgments that will be entered should reflect the collectibility of the judgments against the corporations, perhaps by being entered for the amount of the commissions claimed with credit to be given for any amount recovered on the judgments against the corporations, since only one recovery of the actual damages can be allowed.'

"The effect of the Court's Opinion will be to increase the amount of the Wahby judgment against the individual defendants (appellants) from $1.00 to a judgment of $47,500.00. We respectfully submit that since Wahby did not appeal from the $1.00 judgments awarded in his favor against the individual defendants (appellants), that this Court erred in remanding the case with a suggestion that a new judgment be entered against the individual defendants substantially in excess of the $1.00 judgments rendered in the lower court. A decree may not be reversed for the benefit of one who did not appeal therefrom. *Harrison v. Robinette*, 167 Md. 73."

On January 4, 1971, we denied the motion for reargument without a hearing and without further comment.

After the remand reached the lower court, Wahby filed a motion for revised judgments against Damazo, Toth and Taylor. He requested the lower court to enter judgments against each of the individual defendants in the amount of $47,500.00, *plus* (a) expenses of litigation, (b) interest from June 17, 1968, and (c) attorneys' fees.

The appellants opposed Wahby's motion on two main grounds: (1) that, inasmuch as Wahby had not perfected his cross-appeal from the failure of the lower court to award him a judgment against Taylor in excess of $1.00 or a judgment for counsel fees, court costs and interest, his judgment could not be enlarged by either the trial court upon subsequent remand or this Court and (2) that, even if Wahby had perfected his cross-appeal from the failure of the trial court to award him attorneys' fees, such fees are not properly allowable in the type of case involved in this litigation.

Judge Shearin heard oral argument, but the argument was not transcribed. In any event, no new evidence was produced after the remand other than a stipulation between the parties that the judgments against Willowbrook and Vance were "uncollectible as to said corporations."

As to Wahby, the trial court then on May 10, 1973, directed the entry of new judgments against Damazo, Toth and Taylor, jointly and severally, in the total amount of $84,040.04, computed as follows:

|     |     |     |
| --- | --- | --- |
| (a) | Amount of real estate commission | $47,500.00 |
| (b) | Interest from July 17, 1968, to May 10, 1973, at 6% per annum | 13,950.02 |
| (c) | Attorneys' fees of 33-1/3% | 20,483.34 |
| (d) | Attorneys' fees for appeal | 500.00 |
| (e) | Expenses of litigation | 1,606.68 |
|     |     | $84,040.04 |

Fliegel filed a motion for revised judgments similar to Wahby's motion. The lower court entered judgments against Damazo and Toth, jointly and severally, in the amount of $66,721.37, computed as follows:

|     |     |     |
| --- | --- | --- |
| (a) | Amount of real estate commission | $38,500.00 |
| (b) | Interest from May 31, 1968, to May 10, 1973, at 6% per annum | 11,417.07 |
| (c) | Attorneys' fees of 33-1/3% | 16,639.02 |
| (d) | Costs and expenses incurred | 165.28 |
|     |     | $66,721.37 |

These judgments were entered on the docket on May 11, 1973; and timely appeals were taken to this Court.

There are three principal questions presented to us for decision in the present appeal. Was it reversible error for the lower court upon remand:

(1) To enter judgments against the appellants on the tort counts in excess of the $1.00 judgments originally entered in favor of Wahby, he not having perfected his appeal from the original judgments in his favor for $1.00?

(2) To add interest to the judgments for the real estate brokers' commissions, the interest being calculated from the date of settlement to the date of judgment?

(3) To add attorneys' fees and expenses of litigation to the judgments for the real estate brokers' commissions?

(1)

In retrospect, it would have been wiser if we had expressly excluded from our statement in regard to the vacation of judgments upon the remand of the first *Damazo* case under Rule 871 the Wahby judgments for $1.00 in regard to which he did not perfect an appeal to us and indeed requested in his brief that the judgments *be affirmed.* At that time, when the posture of these judgments was brought to our attention by the motion for reargument which indicated that there might well be some confusion in regard to them — again in retrospect — we might well have indicated by a short *per curiam* opinion that the Wahby judgments for $1.00 each in regard to which no appeal was perfected *were not vacated* and thus we could have avoided the error which resulted in the lower court in regard to these judgments. We are comforted by the thought, however, that in view of the lower court's errors in regard to the allowance of attorneys' fees, interest and the expenses of litigation, the present case would have reached us in any event so that no harm or prejudice has resulted from the possible ambiguity in the first *Damazo* case in regard to the Wahby $1.00 judgments.

We meant, when we referred to "all the judgments" in our opinion in the first *Damazo* case, only those judgments which were before us on appeal were included in those words and that the $1.00 judgments against the appellants — in regard to which no appeal was perfected by Wahby — were not included. This Court in the first *Damazo* case passed upon certain questions raised *by the appellants* in regard to the tort judgments. Thus, although the $1.00 judgments were considered by us, they were not subject to change or consideration by us for Wahby's benefit since he did not cross-appeal.

We stated in *Walston v. Sun Cab Co., Inc.*, 267 Md. 559, 564, 298 A. 2d 391, 394 (1973):

"We have concluded that the appellants' motion to strike should be granted, so that we will not consider the questions decided adversely to Sun Cab by the Court of Special Appeals, they not being the subject of any cross-petition for certiorari filed by Sun Cab.

"We have held many times that an appellee who does not file a cross-appeal cannot urge before us matters not within or related to the issues raised by an appellant. Even if a judgment or decree is prejudicial to an appellee, such prejudice will be disregarded by this Court if there was no cross-appeal filed by the appellee. Moreover, such appellee cannot obtain any affirmative relief by way of reversal, amendment or modification of the judgment or decree under review in this Court. *See e.g., Temple Hill Baptist Church v. Dodson*, 259 Md. 515, 521, 270 A.2d 802, 806 (1970); *Glen Alden Corp. v. Duvall*, 240 Md. 405, 421, 215 A.2d 155, 167 (1965) and prior Maryland cases cited in that opinion. *See also Fennell v. G.A.C. Finance Corp.*, 242 Md. 209, 229, 218 A.2d 492, 502-503 (1966).

"The question presented here is whether the same rule in regard to appeals as of right applies to cases coming to this Court by way of the exercise of its discretion in granting writs of certiorari to lower

courts, principally the Court of Special Appeals. We have concluded that the same rule does apply."

This Court has consistently followed the rule that a judgment or decree from which no appeal has been taken may not be reversed for the benefit of one who did not appeal even though in regard to him the judgment or decree was both erroneous and injurious. Judge Collins aptly stated for the Court in *Fitch v. Double "U" Sales Corp.*, 212 Md. 324, 329-30, 129 A. 2d 93, 96 (1957), reviewing the prior cases in this Court:

> "The appellee did not cross appeal. In *Sprecher v. Sprecher*, 206 Md. 108, 110 A.2d 509, the lower court by decree set aside a deed, but also impressed an equitable lien on the property for sums expended by the appellant in improvements to the property and required the appellee to pay the costs. It was there held that, as the appellee had not appealed from the part of the decree impressing the lien and requiring the appellee to pay the costs, the question was not before this Court. See also *Lynch v. Kamanitz*, 148 Md. 381, 129 A. 362; *Syfer v. Fidelity Trust Co.*, 184 Md. 391, 397, 41 A.2d 293; *Nowell v. Larrimore*, 205 Md. 613, 623, 109 A.2d 747. It was said by Judge Offutt in *Harrison v. Robinette*, 167 Md. 73, 83, 173 A. 60: '* * * a decree may not be reversed for the benefit of one who did not appeal therefrom, even though as to him it was both erroneous and injurious. *Frederick County v. Page*, 163 Md. 631, 164 A. 182; *Gordon v. Miller*, 14 Md. 204; *Lanahan v. Latrobe*, 7 Md. 268; 4 C. J. 697.' "

*See also Reece, Adm'r v. Reece*, 239 Md. 649, 657, 212 A. 2d 468, 472 (1965).

The lower court was of the opinion that, inasmuch as the matter of "Wahby's entitlement to the benefits of a remand" had been placed before us "unsuccessfully" in the motion for reargument under Maryland Rule 850, the issue could not be relitigated before the lower court, relying on our decisions in *Davis Sand & Gravel Corp. v. Buckler*, 231 Md. 370, 190 A.

2d 531 (1963) and *Bayless v. Mayfield, Sub. Tr.*, 224 Md. 359, 167 A. 2d 889 (1961). The principle enunciated in *Buckler* and *Bayless* is to the effect that in a case in this Court in which an issue *is decided* in the Court's opinion and in which there is no motion for reargument filed to challenge it, that issue is deemed to have been decided as the law of the case upon a remand to the lower court for further proceedings. This principle, which is sound, has, however, no application in the present case in that we did not decide in the first *Damazo* case that the $1.00 Wahby judgments were before us for decision and were included in the remand. Indeed, as we have already indicated, our prior decisions are consistently to the contrary. As we have also indicated, in retrospect, it probably would have been wiser for us to have stated that the Wahby $1.00 judgments were not open for consideration by us or for further consideration by the lower court; nevertheless, this was the situation and our opinion in the first *Damazo* case was not contrary to the well-established law. Nor was the situation altered by our denial of the motion for reargument without opinion and without further comment.

The lower court was also of the opinion that, inasmuch as Fliegel had filed and perfected its appeal, the benefits of an appeal will inure to both nonappealing and appealing parties alike, they being "similarly situated," relying on *Maryland Casualty Co. v. City of South Norfolk*, 54 F. 2d 1032 (4th Cir. 1932); *Syfer v. Fidelity Trust Co.*, 184 Md. 391, 41 A. 2d 293 (1945); *In re Barnett*, 124 F. 2d 1005 (2d Cir. 1942) and *Continental Casualty Co. v. United States*, 167 F. 2d 107 (9th Cir. 1948). In our opinion, the reliance on these cases is misplaced in that they all involved claims by members of an intended class and not separate and distinct claims presented in two separate actions at law which were consolidated for the purposes of convenience in the trial of the two cases. When Wahby abandoned his appeal and requested the affirmance of the earlier judgments, he may not benefit from an appeal taken by Fliegel in a separate and independent action.

(2)

We now turn to a consideration of the correctness of the allowance by the lower court in the tort judgments of May 11, 1973, of prejudgment interest at 6% per annum from May 31, 1968, as to Fliegel and from June 17, 1968, as to Wahby.[2]

The trial court was of the opinion that, inasmuch as both the interference with the contracts and the conspiracy to interfere with them were effective and complete when the respective properties were deeded to Coronado, interest should be allowed on the real estate commissions due Wahby and Fliegel, respectively, and should be calculated from the dates of the respective deeds, *i.e.*, from May 31, 1968, in the Fliegel case and from June 17, 1968, in the Wahby case. The lower court relied on the following statement by Chief Judge Sobeloff, speaking for the United States Court of Appeals for the Fourth Circuit, in *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 256 F. 2d 946, 952 (1958), involving a tort action brought in the United States District Court for the District of Maryland to recover damages resulting from the negligent handling by a stevedoring company of a press weighing 19 tons in its transfer from a railroad car to a ship in the Baltimore Harbor:

> "Although at early common law, interest was not allowable in actions of tort, it is now almost universally recognized that interest is recoverable upon the value of chattels tortiously converted, destroyed, or damaged. A.L.I., Restatement, Torts, Sec. 913, Comment (a), subsection (1); Annotation: 'Interest on Amount of Damage,' 36 A.L.R.2d 337, Sec. 63, et seq., p. 473 et seq.; 1 Oleck, Damages to Persons and Property (1957) Sec. 300, p. 641, et seq. For Maryland cases in which interest was allowed in actions of conversion, see: Andrews v. Clark, 1890, 72 Md. 396, 20 A. 429, 434; Seaboard Airline

---

2. The interest on the judgments against Vance and Willowbrook — the corporations primarily responsible — is calculated from March 4, 1970, and February 26, 1970, respectively.

Ry. Co. v. Phillips, 1908, 108 Md. 285, 70 A. 232, 237; Merchants' National Bank v. Williams, 1909, 110 Md. 334, 72 A. 1114, 1117; Saunders v. Mullinix, 1950, 195 Md. 235, 72 A.2d 720, 722."

But Judge Sobeloff continued:

"Where recovery is for bodily harm, emotional distress, or similar intangible elements of damage insusceptible of precise measurement, the award is presumed to be comprehensive, and an additional allowance of interest is denied; but where valuation is reasonably estimable, as for the loss of a chattel, the injury is ordinarily not redressed by allowing only the value of the chattel in disregard of loss of the use of money thereby occasioned."
256 F.2d at 952.

In our opinion, the *Herd* case is distinguishable from the present case in that *Herd* involved a chattel having a readily ascertainable market value and in regard to which the plaintiffs were required to pay out substantial sums over a period of years. In the instant case, however, there was a dispute in regard to the amount of damages so far as the commissions were concerned. In addition, various other factors might well have been considered by the lower court in determining the amount of compensable damages. The amount of damages thus did not become liquidated until the verdict of the court, sitting as a jury, fixed the amount. In short, the claim was unliquidated and not reasonably ascertainable until the verdict, so that the usual tort rule in regard to unliquidated claims for damages applies, *i.e.*, that interest runs from the time of the verdict.[3]

---

**3.** We note that notwithstanding the express provisions of Maryland Rule 564 b, that when an action at law (which the present cases are) is tried upon the facts by the court (as in the instant case), "the court shall direct a judgment *nisi* to be entered upon the law and the evidence," Judge Shearin directed the clerk to enter the judgments forthwith in his opinion of May 10, 1973, and the clerk entered final judgments on May 11, 1973. No point is made by any party in regard to this irregularity and, inasmuch as the appeals from the judgments were not taken within the three-day *nisi* period but were within the 30-day period of appeal from May 14, 1973, on which

When we vacated all of the judgments properly before us for consideration in the first *Damazo* case, the verdicts upon which such judgments rested were also vacated and the parties involved in the vacated judgments were entirely at liberty to challenge the amounts of the respective commissions upon the remand. The verdicts establishing the unliquidated claims were not rendered until May 10, 1973.

In this situation, Maryland Rule 642 provides that interest runs from the date of the judgment *nisi*, that is from May 11, 1973, when the clerk entered the judgments on the docket. *See Cook v. Toney*, 245 Md. 42, 224 A. 2d 857 (1966) and prior Maryland cases therein cited.

(3)

We consider finally whether the lower court erred in adding attorneys' fees and expenses of litigation to the judgments for the real estate brokers' commissions. We have concluded that this action by the trial court was in error.

In our opinion, the recent decision of the Court in *Empire Realty Co. v. Fleisher*, 269 Md. 278, 305 A. 2d 144 (filed June 7, 1973, so that Judge Shearin did not have the benefit of the *Empire Realty* decision prior to his opinion in the present case), is dispositive of this point. In *Empire Realty*, the chancellor, McLaughlin, C.J., set aside a deed to certain real estate because it was obtained by fraud and granted a monetary decree for $19,641.50, including an attorney's fee and various expenses of litigation. In reversing the monetary decree, Judge Levine, for the Court, aptly stated:

> "We turn then to the remaining item of damages, the unspecified fee to Fleisher's trial counsel for prosecuting this case in the circuit court. In this regard, the chancellor merely said:
>
> > 'The investigation, preparation and trial of the case involved, I would suppose, weeks of hard

---

date judgments absolute should have been entered, the appellants escape the rigors of our decision in Merlands Club, Inc. v. Messall, 238 Md. 359, 208 A.2d 687 (1965). We will consider the appeals properly before us under the circumstances of this case, without approving the irregularity in any way.

work by Fleisher's counsel. Mr. Needle made it necessary for Mr. Fleisher to bring suit for redress of the wrong done him and he should be awarded an amount to pay his counsel.'

"The general rule is that, other than usual and ordinary court costs, the expenses of litigation — including legal fees incurred by the successful party — are not recoverable in an action for damages, *Freedman v. Seidler*, 233 Md. 39, 47, 194 A.2d 778 (1963); *Harry's Tavern, Inc. v. Pitarra*, 224 Md. 56, 63, 166 A.2d 908 (1961); *McGaw v. Acker, Merrall & C. Co.*, 111 Md. 153, 160, 73 A. 731 (1909); 1 Sedgwick, *Damages*, § 229 (9th ed. 1912). No attorney fee is ever included in the taxed costs, excepting the appearance fee, unless there is a special statute authorizing it, *Hamilton v. Trundle*, 100 Md. 276, 59 A. 719 (1905). And, in the absence of special circumstances, as where the parties to a contract agree on the payment of attorney's fees, *Webster v. People's Loan, Savings & Deposit Bank*, 160 Md. 57, 152 A. 815 (1931), or a statutory requirement, counsel fees are not a proper element of damages, *Freedman v. Seidler, supra; Rhodes Hardwood v. Blue Ridge*, 225 Md. 158, 169 A.2d 399 (1961); *Harry's Tavern, Inc. v. Pitarra, supra; cf. Marney v. Stack*, 261 Md. 78, 273 A.2d 426 (1971).

"This Court has upheld the award of legal fees in separate litigation against another party caused by the wrongful acts of the defendant, *McGaw v. Acker, Merrall & C. Co., supra*, at 160; *cf. Fowler v. Benton, supra*, at 550. Here, however, we are concerned with the question whether fees may be allowed for legal services rendered in the *instant* litigation. The principle was succinctly stated by our predecessors in *Rice v. Biltmore Apartments Co.*, 141 Md. 507, 516-17, 119 A. 364 (1922):

'Whatever may be the law elsewhere, it has long been the settled law of this State that, in

the absence of some *statutory provision*, a successful litigant is not entitled to recover the fees paid by him to attorneys for prosecuting the litigation.' (emphasis added).

Manifestly, there is no statutory authority to support the award made here.

"Nor does the record in this case reflect such 'special circumstances' as would justify the payment of legal fees, *Freedman v. Seidler* and *Webster v. People's Loan, Savings & Deposit Bank*, both *supra.*

"The Fleishers apparently reason that fraud alone is sufficient to establish 'special circumstances.' We have found no prior decision of this Court which has considered the allowance of attorney's fees for the prosecution of an action grounded on fraud. In a variety of other cases, however, it has been held that counsel fees are not a proper element of damages.[2]"

---

"**2.** Freedman v. Seidler, *supra* (breach of contract); Rhodes Hardwood v. Blue Ridge, *supra* (vacate wrongful attachment); Harry's Tavern, Inc. v. Pitarra, *supra* (breach of contract); Rice v. Biltmore Apartments Co., *supra* (eviction of a tenant from the leased premises); Hollander v. Central Metal Co., 109 Md. 131, 71 A. 442 (1908) (fee for examination of title); Hamilton v. Trundle, *supra* (fees incurred by legatees contesting a provision of a will); Wood v. State, Use of White, 66 Md. 61, 5 A. 476 (1886) (procuring a dissolution of an injunction."

269 Md. at 285-87, 305 A. 2d at 148-49.

*Horn v. Seth*, 201 Md. 589, 95 A. 2d 312 (1953), relied on by the lower court, does not support the award of attorneys' fees and expenses since the amount awarded in the action brought by one real estate broker against another for tortious interference with a contract for commission was *for the amount of the commission due* and for nothing more.

The appellants contend that neither plaintiff in the lower court pleaded any special circumstances justifying any claim for interest and attorneys' fees and that Fliegel's Counts V and VI, unlike Counts I, II, III and IV, did not even seek

interest or counsel fees, so that there was a variance between the amended declarations and the proof. In view of Maryland Rule 642, allowing interest from the date of judgment *nisi* regardless of the pleadings, and our decision in regard to the claims for prejudgment interest and attorneys' fees, already set forth, we do not find it necessary to decide this additional contention.

As a result of our decision in the present case, the judgments entered on the docket in the lower court in the two actions at law on May 11, 1973, are reversed and the case is remanded for the entry of the following judgment:

> In *Fliegel Properties Management, Inc. v. David S. Damazo et al.*, Law No. 25,778.
>
> Against the defendants, David S. Damazo, John L. Toth and Irene Toth, jointly and severally, on Counts V and VI, in the amount of $38,500.00, interest to run from May 11, 1973.
>
> Any amount which may hereafter be recovered from any of the individual defendants is to be credited against the judgment previously entered against Vance Properties, Inc. and vice versa.

The judgments as to Wahby's Counts III and IV are, in essence, correct except that Damazo's name should be stricken from Count III and no punitive damages should be allowed, these deletions resulting from our decision in the first *Damazo* case, Damazo having appealed and raised these two issues. Therefore, the interest on the Wahby judgments is, as Judge Shearin properly noted, to run from February 26, 1970, the day judgment *nisi* was entered on these Counts.

> *Judgments reversed and the case remanded for the entry of judgments in accordance with this opinion, the costs to be paid one-half by the appellants and the remaining one-half to be paid by the appellee, Fliegel Properties Management, Inc.*