**EAST COAST MANAGEMENT, INC., Plaintiff,**

v.

**James J. McLAUGHLIN and Laugro Company, Inc., Defendants.**

**James J. McLAUGHLIN, Plaintiff,**

v.

**Frederick L. LAMOREAU, Defendant.**

**EAST COAST MANAGEMENT, INC., Plaintiff,**

v.

**Harry J. ROHLFING, Defendant.**

Civ. A. Nos. 76–1961, 76–2758 and 77–3836.

United States District Court, E. D. Pennsylvania.

March 3, 1982.

M. Kay Gartrell, Neil G. Epstein, Goodman & Ewing, Philadelphia, Pa., for East Coast Management and Frederick L. Lamoreau.

Hal F. Doig, Guy A. Messick, Fronefield & DeFuria, Media, Pa., for James J. McLaughlin, Harry J. Rohlfing and Laugro Co., Inc.

EDWARD R. BECKER, District Judge.*

## MEMORANDUM AND ORDER

This memorandum disposes of the remaining post-trial motions in these consolidated cases. The first motion concerns the amount of interest due and the time on which interest should be computed on the note which was the subject of C.A. No. 76–2758 and on which the jury found for James J. McLaughlin. The second motion involves the application of East Coast Management ["ECM"], plaintiff in the remaining two cases, for an award of pre-judgment interest under Maryland law on the jury's verdict in its favor. We consider these issues seriatim.

### I. *The McLaughlin/Lamoreau Note*

In answer to one of a number of special interrogatories, the jury found that Lamoreau was liable on a promissory note to McLaughlin. The note, written and signed by Lamoreau, and dated October 9, 1974, states that Lamoreau owes McLaughlin $28,862.99 plus interest computed at the rate of 13.5 percent per annum. The note further provides: "The above note is to be paid on demand March 30, 1975."

McLaughlin has asked that, in addition to receiving the principal on the note per the jury's award, he be awarded the stated

---

* Of the Third Circuit Court of Appeals, sitting by designation. At the time of the trial and filing of post-trial motions in this case, Judge Becker sat as a Judge of the Eastern District of Pennsylvania.

amount of interest (13.5 percent per annum) from October 9, 1974, to the date of judgment.[1] Lamoreau opposes this motion on several grounds. First, Lamoreau contends that the legal rate of interest in Pennsylvania (whose law governs this note) is but six percent per annum, and that he should be required to pay no more than that amount of interest. Second, he contends that McLaughlin is entitled to interest on the note only from October 9, 1974, to January 1, 1975, the date (according to the jury's special finding) of the unlawful ouster of East Coast Management from the partnership, and then from October 1976, when McLaughlin made demand by filing suit to collect on the note, until judgment. These motions rest on the theory propounded by Lamoreau that the note was a hybrid demand/time note with demand the prime factor, in that it contemplated payment of the entire principal and interest, but only upon the demand of McLaughlin which could be made on March 30, 1975, but no earlier than that date. Under this theory, the note did not fall due until McLaughlin made demand by filing suit in October 1976.

Lamoreau also contends that interest should not be paid from January 1, 1975, until October 1976, because on January 1, 1975, when McLaughlin wrongly ousted ECM from the partnership, he converted to his own use the $28,862 principal of the note, which had been borrowed for use in the partnership and which had in fact been paid into the partnership. Lamoreau implies that, the note notwithstanding, McLaughlin is entitled to no interest for this period because interest is essentially compensation for the use of a sum of money by the borrower, whereas here the lender (McLaughlin), rather than the borrower (Lamoreau), had control over the money during this period.

We will first address the issue concerning the proper rate of interest, and then the time period on which interest must be paid.

### A. *The Appropriate Rate of Interest*

In Pennsylvania, the maximum lawful interest rate, except as otherwise provided by law, for the loan or use of money in an amount of fifty-thousand dollars or less is six percent per annum. Pa.Stat.Ann.tit. 41, § 201 (Purdon Supp.1981). The ceiling on interest rates may not be waived by any oral or written agreement executed by any person. *Id.* § 408. When a rate of interest for the loan or use of money exceeds the maximum lawful rate, the debtor need not pay any excess over six percent per annum and may recover any excess interest paid. *Id.* § 501. Unless an exception to the lawful rate of interest applies, McLaughlin will be limited to recovering interest at six percent per annum.

McLaughlin contends that he may recover the full amount of interest as stated on the note under a provision which makes the maximum lawful rate of interest inapplicable to "business loans the principal amount of which is in excess of ten thousand dollars." *Id.* § 301. McLaughlin's citation to Section 301, which is buried obscurely in a much larger statute pertaining to residential mortgage interest rates, is astute, but does not exempt the note from the maximum lawful rate of interest. The Pennsylvania Secretary of Banking, who is empowered to issue regulations and clarifications to effectuate the purposes of the Commonwealth's interest rate laws, has issued a definition of "business loan" under Section 301:

> Business loans—for the purposes of the act shall mean extensions of credit where the funds are to be utilized in a business enterprise and where the following conditions exist:
>
> (i) the borrower exercises actual control over the managerial decisions of the enterprise in which the funds are to be utilized.
>
> (ii) the borrower signs an affidavit under penalty of perjury setting forth the intended use of proceeds.

10 Pa.Code § 7.2 (1979).

Clearly, the McLaughlin/Lamoreau promissory note does not meet the Secretary's definition of "business loan." Lamo-

---

1. The amount of post-judgment interest due under Pennsylvania law is not here at issue.

reau did not exercise "actual control over the managerial decisions of the enterprise in which the funds are to be utilized." Indeed, the jury found that McLaughlin had ousted ECM and assumed sole control over the partnership in which Lamoreau's funds had been invested. The note also does not meet the definition of "business loan" because Lamoreau has not signed an affidavit setting forth the intended use of the proceeds of the note.

▮ Neither of the parties has cited to us, nor has our research revealed any interpretation of the "business loan" exception to Pennsylvania's maximum lawful rate of interest statute beyond that of the Secretary of Banking. Clearly, the McLaughlin/Lamoreau note does not fall under that interpretation. Moreover, our reading of the record persuades us that this was more of a personal debt in a business context than it was a business loan. Therefore, McLaughlin may collect only the usual legal rate of interest on the note, six percent per annum.

### B. *The Period for Which Interest Must be Paid*

▮ Lamoreau argues that he should not be required to pay interest from January 1, 1975, until October 1976, because McLaughlin had converted the partnership assets. The note, however, plainly states that interest was to be paid "on demand March 30, 1975." The jury found Lamoreau liable on this note, and it would be an intrusion into the jury's province for us now to hold Lamoreau liable on terms other than those clearly provided by the note. Therefore, Lamoreau is liable for interest payments for at least the stated period of the note, from October 9, 1974 to March 30, 1975.

The more difficult issue concerns the period after March 30, 1975, for which Lamo-

reau must pay interest.[2] McLaughlin contends that the note was a time note due on March 30, 1975, and that Lamoreau, by failing to satisfy the note on that day immediately went into default, so that in addition to the period of the note, interest should be paid from March 30, 1975 until judgment.[3] Lamoreau observes that although McLaughlin could have demanded payment as of March 30, 1975, he did not do so until suit on the note was filed. According to Lamoreau, as we have seen, because the note was a hybrid, both a time and demand note, he could not be put in default until McLaughlin at least made demand.

We conclude that if one is to give meaning to all its words, the note on its face is susceptible to no other interpretation than that it is payable on McLaughlin's demand, but not before March 30, 1975. Consequently, although the note became payable on March 30, 1975, Lamoreau could not be exposed to default until McLaughlin demanded payment. The equivalent of demand, McLaughlin's filing suit on the note, did not occur until August 31, 1976.[4] As of that date, Lamoreau was in default for refusing to satisfy his obligation under the promissory note.

In sum, the jury having found Lamoreau liable on the note, he must pay the stated interest of six percent per annum on the principal of the note from October 9, 1974, to March 30, 1975. Lamoreau is also liable to McLaughlin for interest at the legal rate on the total amount due under the note (principal and interest due as of March 30, 1975) from August 31, 1976, until judgment. (Additionally, Lamoreau is liable for post-judgment interest.)

### II. *Maryland Pre-Judgment Interest*

The jury returned a judgment in the amount of $189,837.09 in favor of ECM against defendants McLaughlin and Laugro

---

**2.** We treat construction of the note as a legal, rather than a factual issue. Neither party requested that we submit the issue of the time of default to the jury. Rather, both parties have submitted the issue for our determination as a matter of law on the basis of post-judgment motions. Even if the question should have

been for the jury, the parties have waived their right so to claim.

**3.** *See* n.1 *supra.*

**4.** Lamoreau incorrectly states that McLaughlin's suit was filed in October 1976.

Company, Inc. In an Order of October 6, 1981, we amended the judgment in favor of ECM and against McLaughlin and Laugro Company, Inc., by adding the words following the last sentence: "with defendant Harry J. Rohlfing liable for $44,207.09 of the total judgment of $189,837.09."

ECM has moved to amend the judgment to include pre-judgment interest under Maryland law, which governed its suit against McLaughlin, Laugro Company, Inc. and Harry J. Rohlfing. ECM contends that it is entitled to interest on either (1) the amount of the judgment awarded by the jury; (2) the value of its share in the franchise; or (3) the value of ECM's total investment in the partnership. ECM contends that pre-judgment interest should be computed either. from January 1975, the date when the jury found that McLaughlin wrongfully ousted ECM from the partnership, or from June 1976, the date that ECM demanded payment for its share in the partnership by filing this lawsuit. Defendants argue that ECM is not entitled to pre-judgment interest under any of ECM's theories because the damages recovered by ECM were unliquidated and Maryland law does not permit pre-judgment interest when damages are unliquidated.

■ We conclude that ECM must be awarded pre-judgment interest computed from January 15, 1975, until the date of the judgment. Defendants have shot wide of the mark in arguing that interest may not be awarded because ECM's damages were "unliquidated." Under Maryland law, pre-judgment interest "is recoverable as a matter of right in a tort action for the conversion of a chattel where the goods converted have 'a readily ascertainable market value.'" *I. W. Berman Props. v. Porter Bros., Inc.*, 276 Md. 1, 344 A.2d 65, 74–75 (Ct.App.

1975) (*quoting Taylor v. Wahby*, 271 Md. 101, 314 A.2d 100, 106 (Ct.App.1974)). *See also Charles County Broadcasting Co. v. Meares*, 270 Md. 321, 311 A.2d 27 (Ct.App. 1973); *Andrews v. Clark*, 72 Md. 396, 20 A. 429 (1890); *Md. Law Ency., Interest & Usury § 4* (1961). In such a case, interest runs from the date of the conversion or wrongful withholding.

■ This case falls squarely within the category of cases in which Maryland courts grant pre-judgment interest. The gravamen of ECM's claim was that it had wrongfully been ousted from the partnership and that McLaughlin had converted the partnership assets to his own use. Moreover, the nature of the property at issue—an interest in a business partnership—is the kind of property which has a readily ascertainable market value.[5] Therefore, ECM may recover pre-judgment interest on the jury's award to be computed from January 15, 1975, until the judgment is satisfied.[6]

The only remaining question on ECM's motion concerns the rate of post-judgment interest which may be awarded. Although both parties have submitted the issue to us on the assumption that Maryland law governs, we are obligated to address the choice of law issue pertaining to awards of interest. Under 28 U.S.C. § 1961, interest shall be levied on a money judgment recovered in a civil case in a district court

> in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of entry of the judgment, at the rate allowed by State law.

■ Under Pennsylvania choice of law rules, which have not been recently exam-

---

**5.** By fixing the value of the soccer franchise, the major asset of the partnership, and the respective partnership shares, the jury's answers to interrogatories shows that the value of ECM's partnership was readily ascertainable. Indeed, the amount the jury fixed as to the value of ECM's share in the soccer franchise accounts for about five-sixths of the jury's total award.

**6.** The jury fixed the date of dissolution of the partnership no more precisely than January 1975. The parties have not addressed the question of the precise date either in argument to the jury or since. In order to forestall an imbroglio on this point, and in the interest of equity, we have fixed the date for the start of the running of interest in the middle of the month.

ined on this point by any state or federal court, the question whether any such interest is payable and at what rate is governed by the law of the place where the obligation arose. *Thorp v. American Av. & Gen. Ins. Co.*, 212 F.2d 821 (3d Cir. 1954); *Clark v. Searight*, 135 Pa. 173, 19 A. 941 (1890); 19 *P.L.E. Interest & Usury* § 2 (1959). Maryland law governed ECM's suit. Maryland interest law governs the liability of defendants for interest on ECM's property which had been converted, and also the pre-judgment interest to which ECM was entitled, because pre-judgment interest arises as a matter of right out of the underlying transaction which was governed by Maryland law. Pennsylvania law provides that "a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award...." Pa. Cons.Stat.Ann. tit. 42, § 8101 (Purdon Pamphlet 1980). The "lawful rate" of interest, as noted above, is determined by the law governing the obligation, which in this case is Maryland law. Therefore, Maryland law also supplies the rate of post-judgment interest.

The Maryland Constitution provides that, unless the Maryland Legislature otherwise directs, the legal rate of interest is six percent per annum. Md.Const.Art. 3, § 57. Effective July 1, 1980, pursuant to a statute passed by the Maryland Legislature, the legal rate of interest on judgments in Maryland is ten percent per annum on the amount of the judgment. Ann.Code, Courts and Judicial Proceedings, Md. § 11–107. Prior to July 1, 1980, it appears that the legal rate on interest on judgments was determined by reference to the State Constitution. We therefore rule that defendants must pay interest of six percent per annum on the principal amount of the judgment, $189,837.09, from January 15, 1975, to June 30, 1980, and ten percent per annum from July 1, 1980, until the judgment is satisfied.