## COUNTY EXECUTIVE FOR MONTGOMERY COUNTY, MARYLAND ET AL. *v.* SUPERVISOR OF ASSESSMENTS OF MONTGOMERY COUNTY ET AL.

[No. 219, September Term, 1974.]

*Decided May 26, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and O'DONNELL, JJ.

*H. Christopher Malone, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney,* and *Robert G. Tobin, Jr., Deputy County Attorney,* on the brief, for appellants.

*Steven P. Resnick* and *Joseph S. Kaufman* for Virginia K. Casey Visnich, one of appellees. No brief filed on behalf of other appellee.

SINGLEY, J., delivered the opinion of the Court.

In this appeal from an order of the Maryland Tax Court, neither party is content. What happened was that the Supervisor of Assessments of Montgomery County (the Supervisor) assessed 252.61 ± acres of land and improvements located near Gaithersburg, owned by Virginia Casey Visnich, at $2,325,360.00 for the tax year 1972 ($2,319,160.00, land; $6,200.00, improvements).

Mrs. Visnich appealed to Montgomery County's Appeal Tax Court, which reduced by 25 per cent the assessment of 210.16 acres of the tract zoned I-1 (light industrial) from $2,313,640.00 to $1,735,230.00. Both Mrs. Visnich and Montgomery County (the County) appealed to the Maryland Tax Court.[1] Mrs. Visnich's appeal resulted in a further reduction by 25 per cent in the assessment of the 210.16 acres from $1,735,230.00 to $1,156,820.00, an order from which Montgomery County has appealed to this Court. Neither party has challenged the assessment of the remaining 42.44 acres of the tract zoned R-R (rural residential) at $5,520.00 or the assessment of $6,200.00 on improvements, both of which were imposed by the Supervisor of Assessments, and have remair d unchanged in the successive appeals.

The County's unhappiness stems from the fact that the Tax Court and the Appeal Tax Court each reduced the assessment of the 210.16 acres zoned I-1 because of the "sewer moratorium," [2] when, in a strict sense, it was not the moratorium which precluded sewer service.

Mrs. Visnich's discontent, on the other hand, proceeds from the fact that although the land which is the subject of the controversy is admittedly used for agricultural purposes,

---

1. The latter appeal was taken in the names of the County Executive and County Council.

2. This refers to an order by Maryland's Secretary of Health and Mental

she was denied an assessment based on agricultural use because Chapter 75 of the Laws of 1972, now Code (1957. 1975 Repl. Vol.) Art. 81, § 19 (b) (2) (A) (i), effective 1 July 1972, denied preferential agricultural use treatment for assessment purposes to land which has received a higher zoning classification "at the application or at the instance of the owner." [3] *See Supervisor of Assessments v. Ely,* 272 Md. 77, 321 A. 2d 166 (1974).

It seems that on 31 May 1963, Roger H. Spencer, a real estate broker, had sought, as "agent," and had ultimately received, without opposition, a reclassification of 210.16 acres of the Visnich farm from R-R to I-1. While Mrs. Visnich contends that Spencer was not her agent, and that she was unaware of his activity as regards the property, this is an argument with which we need not be concerned, for reasons to be developed. Because Spencer said in a letter which was admitted in evidence that he had undertaken the rezoning in order to increase the sale potential of the property and the County proved that notice of the proposed rezoning was given by publication and by posting the property, and that three parcels were sold by Spencer, apparently for Mrs. Visnich's account, subsequent to the rezoning, it is not likely that we would be persuaded by Mrs. Visnich's argument, if the issue were properly before us.

The County's principal contention is that the Tax Court's further reduction of 25 per cent in the assessment of land zoned I-1, resulting in an aggregate reduction of almost 50 per cent, was not supported by competent, material or substantial evidence and was therefore arbitrary and capricious. With this contention, we agree.

The County's other argument was clearly supported by testimony that the Visnich property was in no way directly affected by the sewer moratorium, because no sewer was available and none would be available before 1979. As a

Hygiene dated 20 May 1970 prohibiting further sewer hookups in Montgomery County because of the inadequacy of sewage disposal facilities.

3. Prior to the effective date of Chapter 75 of the Laws of 1972, the total assessment of the 252.61 acre tract had been $40,970.00 ($16,170.00, land; $24,800.00, improvements).

result, a 25 per cent reduction in the assessment predicated on the moratorium found no support in the testimony.[4] On the contrary, expert testimony by Edward Graham, who described himself as a planner employed by Montgomery County, adduced in behalf of the County made it clear that while water service might be available, the Visnich property was not scheduled for program-sized sewer service (diameter of 15 inches or more) prior to 1979 under the County's Ten Year Water and Sewerage Plan, adopted 3 June 1971.[5]

The County sought to buttress its challenge of the reduction in assessment ordered by the Appeal Tax Court through the expert testimony of its appraiser, Walter J. Locke. It was Mr. Locke's opinion that the 252.61 acres had a fair market value of $14,192,000.00.[6] His opinion was based on what he regarded as comparable sales. The difficulty with this testimony was that Mr. Locke assumed that the entire property was zoned I-1, which it was not. Moreover,

---

**4.** The Tax Court seems to have been understandably confused by a letter of 12 April 1973 from Washington Suburban Sanitary Commission to Mrs. Visnich's brother:

"This is in reply to your letter of March 27, 1973, regarding sewer service for approximately 252 acres fronting on the northeast side of Maryland Route 355 and the southeast side of Shady Grove Road, Montgomery County, Maryland.

"Please be advised that water and sewer facilities are existing in Maryland Route 355 and water facilities only are existing in Shady Grove Road in front of the above-mentioned property. In addition, water facilities are existing in rights of way through the property; however, it must be pointed out that the water mains through the property and the main in Shady Grove Road could not be tapped for service. The sewer extensions required to serve full development of the subject property are prevented, however, by the Commission's Resolution 72-041.

"Even though sewer service to the subject property is not entirely precluded by Resolution 72-041, the Commission's Resolution of February 14, 1973, temporarily defers service to this property in any amount. Since the February 14, action is a temporary measure resulting from the Montgomery County Council's Resolution 7-1071, a more definitive reply to your inquiry cannot be made by this office until such time as the Montgomery County Council establishes guide lines for allocation of the available sewage capacity in the County."

**5.** Graham seemed to think that water was available, and that a small sewer line might be accessible to a portion of the tract, depending on topography.

**6.** This would have supported an assessment of $8,515,200.00 (60 per cent of market value) for state and county tax purposes.

the comparable sales were of smaller tracts, which had sewer service available. Finally, Mr. Locke assumed that the property could be developed for purposes permitted in the I-1 zone by installing individual septic tanks. He said that he had adjusted his comparable sales figures to reflect the lack of sewer service, but did not explain how.

We have consistently held that decisions of the Tax Court will not be disturbed on appeal if they are supported by material, competent and substantial evidence and are not arbitrary, capricious or unreasonable, *Supervisor of Assessments v. Peter & John Radio Fellowship, Inc.*, 274 Md. 353, 355, 335 A. 2d 93, 94 (1975); *Dickinson-Tidewater, Inc. v. Supervisor of Assessments*, 273 Md. 245, 255-56, 329 A. 2d 18, 24-25 (1974), citing *Heaps v. Cobb*, 185 Md. 372, 378-80, 45 A. 2d 73, 76 (1945). In the absence of testimony before the Tax Court as regards the effect of the unavailability of sewer service until 1979 on the market value of the property, the imposition of a 25 per cent reduction, following on the heels of a similar reduction by the Appeal Tax Court, was clearly arbitrary. For this reason, we shall remand the case to the Tax Court as permitted by Maryland Rule 871 a in order that further testimony may be taken, upon which a valid determination may be predicated.

The final point relates to Mrs. Visnich's contention that the Tax Court should not have denied her the preferential treatment accorded to land devoted to agricultural use because the rezoning had not been instituted at her instance. The short answer to this contention is that the issue is not before us, since she took no appeal from this adverse ruling, *Taylor v. Wahby*, 271 Md. 101, 109-10, 314 A. 2d 100, 104 (1974); *Walston v. Sun Cab Co.*, 267 Md. 559, 564, 298 A. 2d 391, 394 (1973); *Fennell v. G. A. C. Finance Corp.*, 242 Md. 209, 229, 218 A. 2d 492, 503 (1966).

> *Order vacated, case remanded to Maryland Tax Court for further proceedings conformable with the views herein expressed; costs to abide the result.*