744 A.2d 25

**RAYNOR ASSOCIATES L.P.**

**v.**

**BALTIMORE DOOR AND FRAME COMPANY, INC.**

**No. 62, Sept. Term, 1999.**

Court of Appeals of Maryland.

Jan. 12, 2000.

304

Jeffrey S. Larson (Richard S. Basile, on brief), Greenbelt, for petitioner.

Jeffrey S. Marcalus (Hillman, Brown & Darrow, P.A., on brief), Annapolis, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

WILNER, Judge.

We shall hold in this case that the Court of Special Appeals erred (1) in granting affirmative relief to an appellee whose own appeal, seeking only part of that relief, had earlier been dismissed for failure to file a timely brief, and (2) when that deficiency was brought to its attention, in achieving the same result by reinstating the appeal eight months after the appeal had been dismissed and two months after the court had issued its initial opinion erroneously granting the affirmative relief.

The dispute arose out of a commercial lease of a 22,600 square foot facility in an industrial park, to be used by respondent, Baltimore Door & Frame Company, Inc. (BDF), for the assembly and distribution of building materials. The lease term ended on June 15, 1996, but BDF, awaiting completion of a new facility, remained in possession and commenced negotiations with the landlord, petitioner Raynor Associates Limited Partnership (Raynor), for an extension of the lease to March, 1997. No agreement was ever reached on an extension, however. Although the lease provided that, if BDF remained in possession after termination, it would become a month-to-month tenant at a rental equivalent to 150% of the lease rental, BDF paid only the lease rental during its extended stay.

In July or August, 1996, while negotiations for an extension were ongoing, Raynor insisted that BDF pave or repave certain common areas adjacent to the leased premises, claiming that BDF's trucks and fork lifts had damaged those areas. Although BDF denied any responsibility for the damage, it

made the repairs, at a cost of nearly $16,000, apparently believing that, if it did so, Raynor would allow it to remain in possession at the lease rental rate. Raynor denied that it had made any such agreement and, in January, 1997, filed a summary ejectment action in the district court, alleging a failure by BDF to pay the required rent. The court apparently concluded that there was no enforceable extension agreement and rendered judgment for Raynor.

BDF appealed that judgment to the Circuit Court for Anne Arundel County. In a separate action in the same court, BDF filed a four-count complaint seeking injunctive and declaratory relief, an order for specific performance, and damages. Alleging that, at Raynor's request, it had made substantial repairs and improvements to Raynor's property, BDF asked the court to enjoin Raynor from enforcing the district court ejectment order, to declare BDF's rights under the lease, to order Raynor to perform its obligations under the lease, and for damages in the amount that the money spent on repairs and improvements exceeded any rent found to be due. BDF alleged that it had paid all disputed rent into an interest-bearing account, although it did not indicate in its complaint any details regarding the account.[1] Raynor answered the complaint and filed a counterclaim. It contended that the lease required BDF to vacate the premises at the end of the lease term, on June 14, 1996, and made BDF liable for any actual damages incurred by Raynor, plus attorneys' fees, if it failed to do so. BDF failed to vacate, and Raynor sought $21,200 in damages.

The appeal was on the record made in the district court, and that was taken up first. BDF claimed that the parties had actually reached an oral agreement for an extension of the lease, on the same terms, to March, 1997, on the condition that BDF make repairs to the parking areas adjacent to the leased premises. After listening to argument, the court determined that the findings of the district court—that there was no

---

1. It appears from what was said at trial that the full rental, at the 150% rate, was paid into an escrow account held by the district court.

enforceable extension agreement and that BDF had become a month-to-month tenant—were not clearly erroneous. It therefore affirmed the district court judgment, determined that Raynor was entitled to the damages it claimed, and indicated its intent to disburse the funds in the escrow account to Raynor. The correctness of those findings and the validity of the judgment affirming the ejectment order are not now before us.

With respect to BDF's complaint, the court dismissed the claims for injunctive, declaratory, and specific performance relief on the ground that those claims all sprang from the alleged oral extension of the lease, which the court had just resolved in the context of the district court appeal. Without mentioning the term, the court essentially applied the doctrine of *res judicata*. It turned then to BDF's claim for the amounts it expended on repairs and improvements, based on a theory of unjust enrichment. There was a significant dispute as to whether BDF was obliged to make the various repairs. Raynor admitted asking BDF to make certain repairs but claimed, and offered evidence to show, that some of the items repaired—particularly access roads, parking areas, and interior dry-wall—were items that BDF had damaged. BDF averred otherwise. It denied having damaged the parking and access road areas and claimed nearly $16,000 for repaving those areas.[2] It also sought $400 for replacing ceiling tiles damaged because of leaks from the roof, which it claimed was Raynor's responsibility to repair. Raynor produced evidence that the tiles had been damaged about three years earlier, that Raynor had offered to replace them, but that BDF decided to replace them with tiles it already had in stock.

After listening to the disputed evidence, the court disallowed the claim for most of the cost of repaving, but found an

---

2. BDF claimed that the adjacent road and parking areas were not part of the leased premises and, for that reason, it had no obligation to repair them. Raynor conceded that there was no express provision in the lease requiring BDF to repair those areas but asserted that it was BDF's trucks and fork lifts that caused the damage, and that BDF was obliged to leave the property in the same condition it found it.

entitlement, on an unjust enrichment basis, to reimbursement for two items—$400 for the ceiling tiles and $2,721 for paving two small areas, for a total of $3,122.[3]   Judgment in that amount was entered for BDF on its complaint.

The judge's findings were announced from the bench on September 26, 1997, at the conclusion of the hearing.  Without waiting for the written judgment to be filed, BDF noted an appeal on October 2, 1997.  Raynor filed a cross-appeal on October 20.  Both appeals were from the money judgment in favor of BDF; they did not purport to concern the affirmance of the district court summary ejectment order, which would not have been appealable to the Court of Special Appeals in any event.  The actual judgment was filed October 22.  By virtue of Maryland Rule 8–602(d), both appeals are deemed to have been filed on October 22.[4]  Because BDF filed its appeal first, it became the appellant and Raynor became the appellee/cross-appellant.  *See* Md. Rule 8–111(a).

In July, 1998, the Court of Special Appeals sent to the parties a briefing and argument schedule that clearly identified BDF as the appellant and advised that, in accordance with Md. Rule 8–502, its brief was due on August 24, 1998, with Raynor's brief to follow 30 days after the filing of BDF's brief.

---

**3.**  There is a discrepancy of approximately one dollar between the component figures and the sum of the judgment as computed by the trial court.

**4.**  It would be helpful if litigants and their attorneys would follow the simple rules governing appeals.  With exceptions not remotely relevant here, an appeal to the Court of Special Appeals may be taken only from a final judgment.  Maryland Rule 2–601 requires that a judgment be set forth on a separate document and declares the judgment effective when that document is recorded by the clerk.  That is when the 30–day period for noting an appeal commences.  Although Rule 8–602(d) preserves an appeal taken after the announcement or signing of the judgment by the court but prior to its entry by the clerk, that rule is intended as a saving feature, not a preferred method of appellate practice.  Disappointed litigants, and their attorneys, should wait for the entry of the judgment by the clerk before noting an appeal.  Following that course not only makes the docket more coherent but eliminates uncertainty about the effect of a premature appeal on post-judgment motions, requests for *in banc* review, and the times for preparing and filing the record.

For whatever reason, BDF failed to file its brief by the due date, and, on September 21, 1998, the Chief Judge of the Court of Special Appeals, on the court's own initiative, entered an order pursuant to Md. Rule 8–602(a)(7), dismissing BDF''s appeal. Md. Rule 8–602(a)(7) permits the court, on its own initiative, to dismiss an appeal if a brief or record extract is not filed by the appellant within the time prescribed by Md. Rule 8–502. The order noted that BDF''s appellant's brief was due August 24, 1998, that the brief had not been filed, but that Raynor had filed an appellee/cross-appellant's brief on August 25. That brief, curiously, contained the record extract that ordinarily would be attached to an appellant's brief.[5]  In addition to dismissing BDF''s appeal, the order stated that the appeal would proceed under the caption of *Raynor v. BDF*, directed Raynor to conform its brief and record extract to its new status as appellant, and ordered that BDF file an appellee's brief by October 30, 1998. Four days later, BDF''s untimely appellant/cross-appellee's brief was filed.

The parties complied, at least in part, with that order. Raynor refiled its brief and record extract, with a yellow cover and designating itself as the appellant. Its argument was that BDF had failed to establish the elements necessary to a claim of unjust enrichment. In particular, it urged (1) that the lease required BDF to repair any damage it caused and provided that all tenant improvements became the property of landlord, (2) that BDF thus knew when it made the repairs that it was doing only what it was obliged to do under the lease and that the improvements would become Raynor's property at the end of the lease, and (3) that apart from any lease requirements, there was no unjust enrichment because BDF was simply

---

5.  BDF attributes the peculiarity of its failure to timely file an appellant's brief, coupled with Raynor's filing its brief 30 days early, at about the time the appellant's brief was due, to confusion over which party was the appellant. On this record, we fail to see any basis for confusion. Apart from the clear mandate of Md. Rule 8–111(a), the scheduling order entered by the Court of Special Appeals in July, 1998 clearly identified BDF as the appellant and BDF's attorney as attorney "for appellant" and stated that the appellant's brief was due by August 24, 1998.

repairing damage it caused to Raynor's property. Raynor also noted that unjust enrichment is based on the value of a benefit conferred, not the amount spent, and that BDF had failed to produce any evidence of such value. In the absence of that evidence, it averred, there was no basis for a judgment for unjust enrichment. It sought a reversal of the circuit court judgment.

BDF filed a new appellee's brief which, except for having a green cover and redesignating BDF as appellee and Raynor as appellant, was identical to the appellant/cross-appellee's brief that it untimely filed after its appeal had been dismissed. The brief responded, in part, to Raynor's arguments but urged that the court erred in not awarding BDF a greater sum. Significantly, although BDF had claimed, in the circuit court, an entitlement to approximately $16,000 in repaving costs alone, in its two briefs—the untimely appellant/cross-appellee's brief and the later appellee's brief—it asserted a right to only $6,507. It averred that "the total amount of repairs Appellee made at the request of Appellant covering areas not damaged by Appellee was $6,507.25," and, in the "Conclusion" part of its briefs, it asked that the Court of Special Appeals "modify the Judgment of the Circuit Court for Anne Arundel County and enter judgment in favor of Appellee in the amount of $6,507.25 and assess the costs of this case to the Appellant."

Notwithstanding that (1) because its own appeal had been dismissed, BDF was not entitled to *any* affirmative relief from the appellate court, and (2) in any event, the only relief it requested in its briefs was an increase in the judgment from $3,122 to $6,507, the Court of Special Appeals, on March 23, 1999, filed an opinion in which it concluded that the judgment for $3,122 should be vacated and that a new judgment should be entered for BDF in the amount of $16,345. In reaching this odd, and wholly unauthorized, result, the panel was obviously unaware that BDF's appeal had been dismissed. At the beginning of its opinion, the court stated that BDF had filed "a cross-appeal" raising the question of whether the trial court erred in limiting its recovery to $3,122, but it never took

account of the fact that the appeal, which was not a cross-appeal in any event, had been dismissed.

The intermediate appellate court first disposed of Raynor's arguments, rejecting all of them and concluding that BDF had no obligation to repair any of the areas it repaired. It then held that the actual cost of the work, established by invoices admitted into evidence, could be taken to determine the amount of benefit conferred by BDF and, on that basis, excused the lack of any direct evidence establishing that value. The correctness of those holdings is not before us, as it was not raised in Raynor's petition for *certiorari*. The issue before us arose from the court's discussion in Part III of its opinion, where it considered BDF's nonexistent "cross-appeal." The "cross-appeal," it said, sought damages for the repairs made to the parking areas, which the appellate court determined to be $15,945.54. Having held that BDF was not obligated to make those repairs, the court concluded that "BDF is entitled to recover that amount from Raynor as well." The aggregate amount it found due was the $15,945.54 and the $400 for ceiling tiles, or $16,345.54. Accordingly, it vacated the judgment for $3,122.65 and remanded with instructions to enter judgment for BDF in the amount of $16,345.54.

An unreported opinion of the Court of Special Appeals was filed March 23, 1999. On April 5, 1999, Raynor filed a motion for reconsideration, reminding the court that BDF's appeal had been dismissed on September 21, 1998 and that, in any event, BDF had never asked, in its appeal, for more than $6,507. It urged that, in light of the dismissal, the court had no jurisdiction to award affirmative relief to BDF. Accepting the fact that the court had rejected its own arguments for a reversal of the judgment, Raynor asked in its motion that the court simply affirm the judgment entered by the circuit court.

The court granted the motion but denied the requested relief. In a supplemental opinion on the motion, the court conceded that the panel assigned to hear the case "was not made aware of the September 21, 1998 order and in the absence of any indication from the parties that BDF's appeal

had been dismissed proceeded to address the merits." It concluded, then, that there was no prejudice to either Raynor or the court from the late filing of BDF's brief and determined that, because BDF's appeal had been dismissed on the court's initiative, rather than on motion, the court had the discretion to reinstate the appeal, which it proceeded to do. Continuing, nonetheless, to ignore the fact that BDF had limited its request for an increase to $6,507, the court confirmed its decision to direct an increase to $16,345.45.

█ We granted *certiorari* to consider two questions: (1) whether the Court of Special Appeals had authority to grant affirmative relief to BDF after BDF's appeal had been dismissed, and (2) whether the court had authority to reinstate the appeal eight months after it had been dismissed and two months after the court decided the appeal.

There really is no dispute with respect to the first issue, which has only a conditional relevance at this point. In *Taylor v. Wahby*, 271 Md. 101, 110, 314 A.2d 100, 104–05 (1974), we noted that we have "consistently followed the rule that a judgment or decree from which no appeal has been taken may not be reversed for the benefit of one who did not appeal even though in regard to him the judgment or decree was both erroneous and injurious." *See also Fitch v. Double "U" Sales Corp.*, 212 Md. 324, 329–30, 129 A.2d 93, 96 (1957); *County Executive v. Supervisor*, 275 Md. 64, 68, 337 A.2d 682, 685 (1975). In ruling on the motion for reconsideration, the Court of Special Appeals itself recognized that it had no authority to grant affirmative relief to BDF in the absence of a pending appeal by that party. That is why, we presume, it granted the motion and attempted to achieve its ultimate end by reinstating BDF's appeal. BDF makes no effort in this Court to sustain the initial decision of the Court of Special Appeals, which obviously was wrong. The judgment of the Court of Special Appeals currently under review, however, was not entered in the absence of a pending appeal by BDF. The primary question before us is the second one raised in the petition—whether the intermediate appellate court acted prop-

erly in reinstating the appeal. If, as we shall hold, it erred in *that* action, *then* the principle noted above, precluding affirmative relief in the absence of a pending appeal, would dictate a reversal of that court's judgment.

The Maryland Rules dealing with appellate procedure set forth both the grounds upon which an appeal may be dismissed in the Court of Special Appeals and the methods by which the appeal may be dismissed. Rule 8–602(a) states the 10 grounds upon which an appeal may be dismissed, either upon motion or on the court's own initiative. Maryland Code, § 1–403(b) of the Courts and Judicial Proceedings Article requires that an appeal in the Court of Special Appeals be heard by a panel of not less than three judges and that the concurrence of a majority of the panel is necessary for "the decision of a case." In conformance with that general requirement, Rule 8–602(b) provides that, except as otherwise permitted in that section of the Rule, a motion to dismiss shall be ruled on by the number of judges required by law to decide an appeal—a minimum of three. Section (b) goes on to provide, however, that the Chief Judge, or a judge designated by the Chief Judge,[6] "may rule on a motion to dismiss that is based on any reason set forth in subsections (2), (3), (5), (7), or (8) of section (a) of this Rule or on a motion to dismiss based on subsection (a)(4) of this Rule challenging the timeliness of the information report."

The areas in which the Chief Judge alone may act for the court, in the first instance, were selected with care and have a certain commonality to them. With the exception of subsections (2) and (8), they all deal with the failure of an appellant to meet a clear time deadline specified in other rules—the failure to note the appeal timely (3), to file the record timely (5), to file the brief and record extract timely (7), or to file the information report required by Rule 8–205 timely (4). Those time requirements, in most instances, are easily and objective-

---

6. For convenience, we shall hereafter omit reference to a judge designated by the Chief Judge and refer only to the authority of the Chief Judge.

ly ascertainable, as is a determination of whether they have been met. The document in question either has been filed by the relevant deadline or it has not. Although the grounds stated in subsections (2) and (8) are not time-based, they also are matters that, ordinarily, are objectively ascertainable—the failure to pay or obtain a waiver of the required filing fee (2), or filing a brief or record extract that does not comply with the content and style requirements of Rules 8–112, 8–501, 8–503, or 8–504. Those are matters that, in our rule-making capacity, we concluded could fairly and efficiently be determined by the Chief Judge alone in the first instance and ordinarily did not need to be presented to a panel. We obviously were aware that the judges of the Court of Special Appeals, like the judges of this Court, have their principal offices in their respective counties and normally are together only when they hear oral argument or on designated conference days. Requiring the convening of a panel to deal initially with those kinds of matters could substantially interfere with the efficient processing of the court's caseload, to no appreciable advantage.

■ Although the latter part of Rule 8–602(b) speaks of the Chief Judge ruling "on a motion to dismiss" based on those subsections, the law generally is that, unless a statute or rule expressly, or by necessary implication, provides otherwise, a court may ordinarily do on its own initiative what it may do on motion of a party, at least where the party benefitted by the action is not likely to oppose or be prejudiced by it. In *Goins v. State,* 293 Md. 97, 111, 442 A.2d 550, 557 (1982), we stated:

"Except as limited by statute or rule, a trial court has inherent authority to control its own docket. A rule authorizing a litigant to file a procedural motion for this purpose in one respect or another should not be construed to prohibit the court from accomplishing the same object sua sponte unless such construction is compelled by clear language."

*See also Board of Nursing v. Nechay,* 347 Md. 396, 701 A.2d 405 (1997), *but compare Hartford Ins. Co. v. Manor Inn,* 335 Md. 135, 642 A.2d 219 (1994) (court has no authority, in the

absence of a motion, to grant summary judgment) and *Urquhart v. Simmons,* 339 Md. 1, 660 A.2d 412 (1995) (court has no authority to transfer case for forum *non conveniens* on its own initiative).

That same general principle is necessarily applicable to appellate courts and to the authority of the Chief Judge and the court itself to do on their own initiative what they could do on motion. We may take judicial notice of the operation and practices of the courts of this State (*see Prince George's County v. Aluisi,* 354 Md. 422, 434, 731 A.2d 888, 895 (1999); *State v. Frazier,* 298 Md. 422, 430 n. 5, 470 A.2d 1269, 1273 n. 5 (1984)), and, in that regard, we take judicial notice of the long-established procedure in the Court of Special Appeals for the Chief Judge to enter orders of dismissal on the enumerated grounds, on the court's own initiative, rather than on motions filed by an appellee or cross-appellee. The practice, some of which is described in PAUL SANDLER & ANDREW LEVY, APPELLATE PRACTICE FOR THE MARYLAND LAWYER: STATE AND FEDERAL, Md. Inst. for Continuing Prof'l Educ. for Lawyers (1994), is for the clerks of the circuit courts, on a monthly basis, to inform the clerk of the Court of Special Appeals of the filing of appeals, for the appellate clerk then to develop a "tickler" of when information reports and records are due to be filed and, after an appropriate grace period and in the absence of any approved extension, to prepare and present to the Chief Judge an order of dismissal if the report or the record is not timely filed. *Id.* at 40. Similarly, once the record is filed and a briefing schedule is sent to the parties, the clerk of the Court of Special Appeals keeps track of when the appellant's brief and record extract is due and, after a grace period and in the absence of any approved or stipulated extension, prepares and presents to the Chief Judge an order of dismissal if the document is not timely filed. *Id.* at 41.

Over the years, this practice, of allowing the Chief Judge to do on the court's own initiative what the Chief Judge could do on motion, has proven to be fair, reasonable, and efficient. We fail to see how an appellee, even if also a cross-

appellant, can be prejudiced by or is likely to object to a routine dismissal of the appellant's appeal, by action of the Chief Judge, because the appeal was not taken timely, or an information report, the record, or the appellant's brief or record extract was not filed timely. Submission of such matters routinely by the clerk to the Chief Judge is not only for the convenience of the court, but it avoids the need for the appellee to file and serve a motion on the appellant and for the court then to have to wait for a possible answer. We thus conclude that the Chief Judge may exercise the same authority to act for the court with respect to matters arising under Rule 8–602(a)(2), (3), (4), (5), (7), and (8), on the court's own initiative, as he or she could on a motion.

Reconsiderations by the Court of Special Appeals are dealt with in two different rules—Rule 8–602(c) and Rule 8–605. We are concerned here with the former, which deals specifically with the reconsideration of an order of dismissal entered under Rule 8–602. Rule 8–605 deals with the reconsideration of other dispositions of an appeal, normally on the merits and after briefing. Rule 8–602(c) draws a clear distinction between appeals dismissed by action of the Chief Judge alone and those dismissed by action of a panel. In that regard, it must be kept in mind that (1) the Chief Judge may act alone in only six of the ten categories enumerated in Rule 8–602(a), and (2) even in those categories, the matter *could* be presented to a panel—the Chief Judge is not *required* to act alone, but is merely permitted to do so.

Rule 8–602(c)(1) provides that, when an order of dismissal was entered by the Chief Judge alone, pursuant to Rule 8–602(b), "the order dismissing the appeal, *on motion filed within ten days after entry of the order,* shall be reviewed by the number of judges of the Court required by law to decide an appeal." (Emphasis added). It goes on to state:

"The order dismissing the appeal (A) shall be rescinded if a majority of those judges decides that the motion to dismiss should not have been granted, (B) may be rescinded if the appeal was dismissed pursuant to subsection (4), (5), or (7) of section (a) of this Rule, and the Court is satisfied that the

failure to file a report, transmit the record, or file a brief or record extract within the time prescribed by these Rules was unavoidable because of sickness or other sufficient cause, and (C) may be rescinded if the appeal was dismissed pursuant to subsection (a)(8) of this Rule and the Court is satisfied that a brief, appendix, or record extract complying with the Rules will be filed within a time prescribed by the Court."

Paragraph (c)(2) of the Rule deals with an order of dismissal entered by a panel. It provides that, if an appeal is dismissed by the ruling of the Court or a panel pursuant to section (a)(4), (6), (8), or (9) of the Rule, "the order dismissing the appeal, *on motion filed within ten days after entry of the order,* may be rescinded if the Court is satisfied that a report, record, brief, appendix, or record extract complying with the Rules will be filed or the proper party will be substituted within a time to be prescribed by the Court." (Emphasis added).

Rule 8–602(c) contains two other pertinent provisions. Section (c)(3) provides that, if an order of dismissal is rescinded, the case shall be reinstated on the docket on the terms prescribed by the Court. Section (c)(4) establishes the exclusivity of the reconsideration process specified in the Rule. It states that, "[w]hen an order dismissing an appeal is reviewed by the Court on motion filed pursuant to this section, the moving party may not obtain further reconsideration of the dismissal pursuant to Rule 8–605." [7]

This special treatment of reconsideration of orders of dismissal entered under Rule 8–602 is purposeful. The kinds of issues that may arise from them, all relating to preliminary matters relevant to perfecting the appeal, rather than to the merits of the appeal, should be resolved preliminarily. If the appeal is to be dismissed on any of those grounds, it should be

---

7. Rule 8–605 has a conforming provision. Section (a) of that Rule provides that "[e]xcept as otherwise provided in Rule 8–602(c), a party may file pursuant to this Rule a motion for reconsideration of a decision by the Court that disposes of the appeal."

removed from the docket early in order (1) that the appeal not remain in the mix of cases assigned for argument, and (2) that the argument panel not have to plow through briefs and do research on the merits, only to find that there is a procedural impediment to their reaching those issues. When there is a surviving cross-appeal, as there was here, early resolution of a procedural problem under Rule 8–602(a) permits the parties to focus their argument and the court to focus its attention on the issues remaining for resolution. The requirement that a motion to reconsider an order of dismissal entered under Rule 8–602 be filed within 10 days, whether the order of dismissal was entered by the Chief Judge or a panel, is critical to the achievement of these goals.

■ In assuming the power to reinstate BDF"s appeal eight months after the appeal was dismissed by the Chief Judge and two months after it erroneously decided the appeal, all on its own initiative and without any motion by BDF for that relief, the argument panel concluded (1) that the ten-day requirement for filing a motion to reconsider under Rule 8–602(c) applied only if the order of dismissal was entered by the Chief Judge on a motion to dismiss, rather than on his or her own initiative, and (2) that Raynor was not prejudiced by its belated action. Both of those conclusions were wrong.

■ It is true that Rule 8–602(b) speaks of the authority of the Chief Judge to rule "on a motion to dismiss" pursuant to the six enumerated subsections of Rule 8–602(b), but, as we have said, by long-standing law and established practice in the Court of Special Appeals, that authority includes the power of the Chief Judge to act for the court on its own initiative. The reconsideration provision in Rule 8–602(c) thus necessarily applies to *all* orders of dismissal entered by the Chief Judge on behalf of the court. To conclude otherwise would be to invite terrible uncertainty as to the real and final status of appeals purportedly dismissed by the Chief Judge on his or her own initiative, especially in the case of cross-appeals, for, if the provisions of Rule 8–602(c) did not apply, Rule 8–605 likely would.

■ The argument panel's conclusion that no prejudice from its action was suffered by Raynor is equally flawed. In reaching that conclusion, the court focused only on whether Raynor was prejudiced by the late filing of BDF's brief, but that is not the issue. Once BDF's appeal had been dismissed, Raynor reasonably could believe that it had nothing to lose by pursuing its own appeal. The worst that could happen would be for the court to affirm the $3,122 judgment, in which event it would have to pay the costs of the appeal. If it had known that, in considering its own appeal, the appellate court might decide to reinstate BDF's appeal and award BDF $16,345—$10,000 more than it asked for—Raynor may, and probably would, have dismissed its appeal and terminated the appellate litigation, concluding that the risk of losing another $13,000 outweighed the prospect of gaining a $3,122 victory. Raynor clearly was prejudiced by being led to believe that BDF's request for affirmative relief was no longer before the court and then being ambushed, *on its own motion for reconsideration,* after the case was decided.

■ The dismissal of BDF's appeal in September, 1998 effectively withdrew any authority of the appellate court to provide affirmative relief to BDF. The only remedy under the Rules available to BDF at that point—a fully effective remedy if it could make the case—was to file a motion for reconsideration under Rule 8–602(c) within 10 days. When it failed to do so, the court's ability under the Rules to provide affirmative relief ended.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM JUDGMENT OF CIRCUIT COURT FOR ANNE ARUNDEL COUNTY; COSTS IN COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER, RAYNOR; COSTS IN THIS COURT TO BE PAID BY RESPONDENT, BDF.